

IN THE
TENTH COURT OF APPEALS

No. 10-10-00198-CR

FLOYD ANTHONY BLOUNT,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 54th District Court
McLennan County, Texas
Trial Court No. 2009-1640-C2

MEMORANDUM  OPINION

In two issues, Appellant Floyd Anthony Blount appeals his conviction for aggravated assault. We will affirm.

BACKGROUND

Tony Montoya testified that he dropped his truck off at the local high school so that his son could drive it home from baseball practice. Montoya, a plumber, left his work tools in the truck. About thirty minutes after his son had arrived home from baseball practice, Montoya noticed that his tools were missing. Shortly thereafter,

Montoya's younger son came running home from a nearby friend's house. Montoya's younger son testified that a man had come by his friend's house wanting to buy drugs and that the man had tools that looked just like his dad's tools. He told his dad this, and they got in the truck and left to see if they could find the man.

Montoya testified that they found Blount walking down the street and that Blount had Montoya's tools. Montoya confronted Blount. Blount said that he had found the tools and that they were now his. Montoya continued to insist that the tools were his, and Blount then pulled a machete out of his backpack. Blount took several steps toward Montoya and threatened to "cut [him] up." Montoya stated that Blount seemed to be intoxicated. Montoya then told Blount that if he would leave the tools, Montoya would not call the police. Blount put the machete up, left the tools, and walked away.

Montoya and his son went back to their home and called the police. The police responded and found Blount with the machete. One of the officers testified that Blount appeared to be intoxicated or high. Blount told the officers that he pulled the machete on Montoya because Montoya had a gun. Montoya testified that he did not have a gun with him when he confronted Blount.

Blount testified that he did steal Montoya's tools. His car had run out of gas, and he was walking to the store so that he could sell Montoya's tools and some tools that he had had in his own car for gas money. As he was walking, Montoya confronted him with a gun and demanded his tools back. Blount gave Montoya the tools. Montoya then told Blount, "Okay, I'm going to let you make it this time." Blount denied being

under the influence of anything that day and denied that he pulled the machete out and threatened Montoya with it.

A jury found Blount guilty of aggravated assault with a deadly weapon finding and assessed his punishment, enhanced by two prior felony convictions, at thirty years' imprisonment.

## JUROR MISCONDUCT

In his first issue, Blount contends that the trial court erred in not granting a mistrial after a juror revealed during the trial that she had previously seen Blount so drunk that he was refused service at a convenience store.

During voir dire, the trial court asked if any of the venire-members knew Blount. No one in the venire said that they knew Blount. Thereafter, on the morning of the second day of the guilt/innocence phase of the trial, the bailiff reported to the court, and the court in turn informed the State and Blount, that one of the jurors had approached the bailiff and told him that she had previously encountered both Blount and the victim at a convenience store and exchanged casual greetings. The bailiff also confirmed that the juror told him that she had seen Blount inebriated or intoxicated on more than one occasion but that she could still be fair.

Blount's counsel objected, arguing that he would have exercised a peremptory strike on the juror had he known of her previous contact with Blount. Blount's counsel also suggested that he have the opportunity to examine the juror "so we can hear exactly what she has to say to see . . . whether or not she'd be fair in going forward and

whether or not we need to move for a mistrial." The court eventually decided to proceed with the trial without permitting the examination of the juror:

> Well, she has informed the court bailiff, each time she's disclosed some of this information, that she could be fair. I'm not going to permit the examination of the member of the jury.

> And is there anything, then, from the State or the defense before I bring the jury in the courtroom?

Blount's counsel replied, "Just procedurally, in order to preserve error, I'd like to move for a mistrial at this time." The trial court denied the motion.

Subsequently, after the court read the punishment verdict in open court, the trial court then decided that the juror should be questioned. The juror testified that she had seen Blount and the victim on multiple occasions at a convenience store. On one occasion, she had seen Blount very intoxicated, and the convenience store employees refused to sell him beer. When asked if Blount then "cause[d] a scene," she replied, "Not really." She said that Blount told them that they were lying and then went out to the parking lot. The juror stated that she then laughed and said, "Well, he's having a good time."

The juror agreed that having seen something already, it would be easier to believe it when someone said it happened again. Defense counsel asked, "[S]o when the officers testified about him getting mouthy during the arrest, that was pretty easy for you to believe since you had seen him get mouthy?" At first, the juror replied "yes," but then changed her answer and said, "Not because of that. Because that's what people do when they're full like that." The juror ultimately stated that despite having

some knowledge of Blount, she "definitely" based her decision and her verdict solely and only on the evidence that she heard in the courtroom.

As soon as the juror exited the courtroom, the trial court asked, "Is there anything from the State or the defense at this point in time?" The State replied, "Nothing from the State, Your Honor." Blount's counsel replied, "Nothing from the defense, Your Honor."

The State initially argues that Blount forfeited his complaint about the juror when, after the juror was questioned, Blount failed to re-urge his objection, renew his request for a mistrial, or ask that a new trial be granted. Blount responds that the post-verdict questioning of the juror functioned essentially as an offer of proof by way of question and answer and did not require that he re-urge his objection. We agree with the State.

To have preserved a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(A). Furthermore, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or refused to rule on the request, objection, or motion, and the complaining party objected to the refusal. *Id.* "The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time-consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the

orderly and effective presentation of the case to the trier of fact." *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006).

Here, as soon as he discovered that the juror had previous contact with him, Blount objected and requested the opportunity to examine the juror "so we can hear exactly what she has to say to see . . . whether or not she'd be fair in going forward and whether or not we need to move for a mistrial." When the trial court denied this request, Blount then moved for a mistrial, which the trial court also denied. Thereafter, the trial court revisited its decision and essentially granted Blount part of the relief that he had requested. The trial court allowed Blount the opportunity to examine the juror. The juror then answered the questions of the trial court, the State, and Blount, and, at that time, Blount did not re-urge his objection, renew his request for a mistrial, or ask that a new trial be granted. Thus, Blount did not preserve his complaint for review. *See Nevarez v. State*, 503 S.W.2d 767, 769-70 (Tex. Crim. App. 1974) (complaint about failing to grant motion for mistrial unpreserved when defense attorney objected and moved for mistrial, trial court just sustained objection, and defense attorney did not request that jury be instructed not to consider matter complained of and did not renew his motion for mistrial); *see also Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) ("[T]he point of error on appeal must comport with the objection made at trial."). Instead, Blount left the impression that he was satisfied with the juror's answers and felt that she had been fair. We overrule Blount's first issue.

## IMPEACHMENT WITH PRIOR CONVICTIONS

In his second issue, Blount contends that the trial court abused its discretion in allowing the State to impeach him with five of his prior convictions that were outside the Rule 609 ten-year window.[1]

On direct examination, the following exchange took place between Blount and his trial counsel:

> Q      All right.  Mr. Blount, I'm going to ask you a few questions. And the first thing I'm going to ask you about is similar to when the State was asking Mr. Montoya about some prior problems with the law.  I'm going to talk to you about some prior problems you've had as well, okay?
>
> A      Yes, sir.
>
> Q      Okay.  Let's see, in -- in 2005, were you convicted for Possession of Firearm By a Felon?
>
> A      Yes, sir.
>
> Q      Okay.  In -- I'm sorry, give me one second here.
>          In November of 2000, in Harris County, were you convicted of Unauthorized Use of a Motor Vehicle?
>
> A      Yes, sir.

---

[1] Rule of Evidence 609 provides in pertinent part:

> (a) **General Rule.**  For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record but only if the crime was a felony or involved moral turpitude, regardless of punishment, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to a party.
>
> (b) **Time Limit.**  Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

TEX. R. EVID. 609(a), (b).

Q       In 2002, were you convicted of Burglary of a Motor Vehicle?

A       Yes, sir.

Q       And then 2004, were you convicted of Theft in Harris County?  May of '04?

A       Yeah.

The following exchange then took place on cross-examination:

Q       [Prosecutor] …  Now, Mr. Blount, you didn't really go over all your criminal history, did you?

A       Me?

Q       Uh-huh.

A       No.

Q       Okay.  In fact, you went to the penitentiary on November 3rd, 1981?

[Defense Counsel]:    Objection, Your Honor.    May we approach?

THE COURT:  State your objection on the record.

[Defense Counsel]:  I'm sorry?

THE COURT:  What's your objection?

[Defense Counsel]:  Um -- um, she's going outside the scope of what's admissible here as a witness, any felony or any crime of moral turpitude within the last 10 years is admissible, but not a conviction in 1981.

[Prosecutor]:    Your Honor, there's a steady chain of convictions that I'll attach.

THE COURT:  I'll overrule the State's -- I mean, overrule the defense's objection.

Q      [Prosecutor]  Mr. Blount, isn't it true that you went to the penitentiary on November 3rd, 1981, out of the 180th District Court in Harris County for the felony offense of Burglary?

A      Yes, ma'am.

Q      All right.  And isn't it true that on that same date, November 3rd, 1981, you also went to the penitentiary out of the 180th District Court of Harris County for the felony offense of Escape?

A      Yes.

Q      All right.  And then you went back to the penitentiary on October 28th of 2005, out of the 230th District Court of Harris County for Unlawful Possession of a Firearm By a Felon?

A      What year?

Q      2005.

A      Yes, ma'am.

Q      All right.  Isn't it also true that you were convicted on March 4th, 1981, in Harris County, Texas, for the offense of Resisting Arrest?

A      I don't remember that.

Q      Okay.  That's going to be Cause Number 604238.

THE COURT:  Let me see counsel up here for just one second.

(Off-the-record bench conference with Court and counsel.)

Q      [Prosecutor]  Now, Mr. Blount, isn't it true that you went to the penitentiary again on July 8th of 1999, out of the 176th District Court of Harris County for Possession of Cocaine?

A      Yes, ma'am.

Q      And isn't it true that you went to the penitentiary on that same date, July 8th, 1999, for another felony offense of Theft From a Person?

A      Yes, ma'am.

Q      And November 8th, 2000, out of the 203rd District Court of Harris County for Unauthorized Use of a Motor Vehicle?

A      Yes, ma'am.

Q      And February 4th 2002, for Burglary of a Motor Vehicle?

A      I don't remember that.

Q      How about May 13th, 2004, in Harris County for Theft? Don't remember those?

A      No.

Blount complains that the 1981 conviction for resisting arrest, the 1981 conviction for burglary of a building, the 1981 conviction for escape, the 1999 conviction for possession of a controlled substance, and the 1999 conviction for theft from a person were remote for purposes of Rule 609(b) and therefore should not have been admitted into evidence during the guilt/innocence phase of the trial.  The State responds that Blount preserved only his complaint to the 1981 conviction for burglary of a building.

As stated above, to have preserved a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context."  TEX. R. APP. P. 33.1(a)(A).  The objecting party must continue to object each time the objectionable question or evidence is offered, obtain a running objection, or request a hearing outside the jury's presence to preserve a

complaint for appellate review. *Grant v. State*, 345 S.W.3d 509, 512 (Tex. App.—Waco 2011, pet. ref'd).

Here, the only objection Blount made to the admission of the prior convictions was, "[S]he's going outside the scope of what's admissible here as a witness, any felony or any crime of moral turpitude within the last 10 years is admissible, but not a conviction in 1981." Blount argues that the context of this objection shows that he was objecting to "admission of any and all of Blount's prior convictions that were outside the ten-year window, not merely the 1981 conviction." However, Blount specifically objected only to a 1981 conviction, he did not obtain a running objection, and he did not request a hearing outside the jury's presence. Thus, we conclude that Blount's complaints on appeal about the admission of the 1999 convictions were not preserved. We will assume without deciding that his complaints about the admission of all three 1981 convictions were preserved and that the trial court erred in admitting the evidence.

Error under the Rules of Evidence in admitting evidence is nonconstitutional error governed by Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); TEX. R. EVID. 103(a); *Solomon v. State,* 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). Rule 44.2(b) provides that a nonconstitutional error "that does not affect substantial rights must be disregarded." Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State,* 78 S.W.3d 352, 356 (Tex. Crim. App. 2002). In conducting a harm analysis under Rule 44.2(b), we decide

"whether the error had a substantial or injurious effect on the jury verdict." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). We "consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the error and how it might be considered in connection with other evidence in the case[,] . . . the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments, and voir dire if material to appellant's claim." *Id.* We also consider overwhelming evidence of guilt, but that is only one factor in our harm analysis. *Motilla*, 78 S.W.3d at 356-58.

Here, despite the admission of the 1981 convictions, the State offered evidence of Blount's lengthy and varied criminal history by questioning him about a 1999 conviction for possession of cocaine, a 1999 conviction for theft from a person, a 2000 conviction for unauthorized use of a motor vehicle, a 2002 conviction for burglary of a motor vehicle, a 2004 conviction for theft, and a 2005 conviction for unlawful possession of a firearm by a felon. Under these circumstances, we have a fair assurance that the erroneous admission of the 1981 convictions did not influence the jury or had but a slight effect. We overrule Blount's second issue.

## CONCLUSION

Having overruled both of Blount's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
       Justice Davis, and
       Justice Scoggins
       (Chief Justice Gray concurring with note)*
Affirmed
Opinion delivered and filed June 6, 2012
Do not publish
[CRPM]

\*      (Chief Justice Gray concurs with the Court's judgment to the extent it affirms the trial court's judgment.  A separate opinion will not issue.  Chief Justice Gray notes, however, that he is of the opinion that appellant adequately preserved appellant's first issue regarding the juror, would address the issue on its merits and overrule the issue; thus holding the trial court did not err in its denial of appellant's motion for mistrial.)